WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Best Western International, )
Inc.,                       )
                            )
              Plaintiff,    )    No. CIV 05-3247-PHX RCB
                            )
         vs.                )         O R D E R
                            )
Kantilal J. Govan and Aruna )
K. Govan, husband and wife, )
                            )
              Defendants.   )
_____)

### *Introduction*

On August 29, 2006, this court denied a motion by defendants, Kantilal and Aruna Govan, to dismiss this action based upon improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  See Best Western International, Inc. v. Govan, 2006 WL 2523460, at *6 (D.Ariz. Aug. 29, 2006) ("Govan I").  The court also denied defendants' alternative motion to transfer venue to the Eastern District of California pursuant to 28 U.S.C. § 1406(a).[1]  See id.

---

[1]   "Under 28 U.S.C. § 1406(a), when an action is filed in the wrong district, the district court may dismiss the action, or, for the convenience of parties and witnesses, as well as in the interests of justice, the district court may use its discretion to transfer a civil action to any other district where it might have been properly brought."  Grandinetti v. Bauman, 2007 WL 676012, at *5

1    Currently pending before the court is defendants' motion

2  pursuant to Fed. R. App. P. 5[2] to amend that order to allow an

3  interlocutory appeal in accordance with 28 U.S.C. § 1292(b)

4  (doc. 15).  More specifically, defendants are requesting that as

5  section 1292(b) permits, this court amend Govan I to add the

6  following language:

7              The Court is of the opinion that this
             Order involves a controlling question
8              of law as to which there is a substantial
             ground for difference of opinion and that an
9              immediate appeal from this Order as authorized
             by 28 U.S.C. § 1292(b) may materially advance
10             the ultimate termination of this litigation.

11  Id. at 4.

12    Having carefully considered defendants' motion, plaintiff's

13  response thereto (doc. 21), as well as defendants' reply (doc. 23),

14  the court rules as follows.

15                          *Background*

16    As explained more fully in Govan I, familiarity with which is

17  assumed, in the winter of 2001, defendants entered into a

18  "Membership Application and Agreement" with plaintiff Best Western

19  International, Inc.  Complt. (doc. 1), exh. 1 thereto.  "Best

20  Western is an Arizona non-profit corporation doing business in the

21  State of Arizona."  Id., exh. 1 thereto at ¶ 2.

22    As a result of that Agreement, defendants became a member of

23  Best Western.  As part of their membership privileges defendants

24  were licensed to use Best Western's "symbols" in connection with a

25  _____

26  (D.Hawai'i Feb. 28, 2007) (citing 28 U.S.C. § 1404(a)).

27    [2]  Fed. R. App. P. 5(a)(3) authorizes a party to, among other things,
"petition for permission to appeal" where that party has first received district
court certification allowing an interlocutory appeal pursuant to 28 U.S.C. §
28  1292(b).

1   hotel which they owned and operated in Madera, California.  <u>See</u> <u>id.</u>

2   at 18.  In addition to allowing defendants to use those symbols,

3   pursuant to that Agreement Best Western provided them with a host

4   of services, such a worldwide satellite reservation system and

5   worldwide marketing campaigns.

6       That Agreement included a "Choice of Forum" clause which, as

7   noted in <u>Govan I</u>, specifically states that defendants

8   "acknowledge[] that Best Western is headquartered in Phoenix,

9   Arizona, that the majority of Best Western's records and employees

10  are in Phoenix, Arizona, and that Phoenix, Arizona is the most

11  convenient locale for actions between Best Western and

12  [defendants]."  <u>Id.</u>, at 19, ¶ 38.  Although not mentioned in <u>Govan</u>

13  <u>I</u>, that clause further provides in relevant part that:

14              UNLESS WAIVED BY BEST WESTERN IN WHOLE
                OR IN PART, . . . *VENUE SHALL BE IN THE COURTS*
15              *[STATE OR FEDERAL] LOCATED IN MARICOPA COUNTY,*
                *ARIZONA. [DEFENDANTS] EXPRESSLY CONSENT[] AND*
16              SUBMIT[] TO THE JURISDICTION OF SAID COURTS
                AND *TO VENUE BEING IN MARICOPA COUNTY, ARIZONA.*
17
    <u>Id.</u> (emphasis added).
18
19      Defendants allegedly breached that Membership Agreement, and

20  thus Best Western commenced this action in the Superior Court of

21  Arizona, Maricopa County.  <u>See</u> Complt. (doc. 1), exh. 1 thereto.

22  Defendants removed to this district court asserting federal

23  jurisdiction based upon diversity of citizenship pursuant to 28

24  U.S.C. § 1332(a)(1).  Shortly after removal defendants then moved

25  to dismiss this action for improper venue in accordance with Fed.

26  R. Civ. P. 12(b)(3). Alternatively, defendants moved for a transfer

27  of this action to the Eastern District of California pursuant to 28

28  U.S.C. § 1404(a).

1    In moving to dismiss for improper venue, defendants argued

2   "that, under 28 U.S.C. § 1391(a),[3] venue . . . is only proper in

3   California because" they "are both California residents, . . . the

4   hotel at issue . . . is located in California, and . . . all of

5   Defendants' alleged actions/inactions, as well as Plaintiff's

6   investigation thereof, took place in California." Govan I, 2006 WL

7   2523460, at *3 (internal quotation marks and citation omitted)

8   (footnote added).  Defendants further argued that the Agreement's

9   forum selection clause is "unconscionable because it is one-sided

10  and invalid under the California Franchise Relations Act [("the

11  Act")]." Id. (citations omitted).  That Act reads as follows:

12                  A provision in a franchise agreement
                    restricting venue to a forum outside
13                  this state is void with respect to any
                    claim arising under or relating to a
14                  franchise agreement involving a franchise
                    business operating within this state.
15
16  Id. (quoting CAL. BUS. & PROF. CODE § 20040.5 (West 1997)).

17       In urging repudiation of the Agreement's forum selection

18  clause, defendants relied heavily upon Jones v. GNC Franchising,

19  Inc., 211 F.3d 495 (9th Cir. 2000), as they continue to on this

20  motion.  As more fully explained in Govan I, the Ninth Circuit in

21  _____

22       [3]    That statute provides:

23          A civil action wherein jurisdiction is founded only
         on diversity of citizenship may, except as otherwise
24       provided by law, be brought only in (1) a judicial district
         where any defendant resides, if all defendants reside in
25       the same State, (2) a judicial district in which a substantial
         part of the events or omissions giving rise to the claim occurred,
         or a substantial part of property that is the subject of the
26       action is situated, or (3) a judicial district in which any
         defendant is subject to personal jurisdiction at the time the
27       action is commenced, if there is no district in which the action
         may otherwise be brought.
28  28 U.S.C. § 1391(a).

- 4 -

1  <u>Jones</u> held that the Act "expresses a strong public policy of the

2  State of California to protect California franchisees from the

3  expense, inconvenience, and possible prejudice of litigating in a

4  non-California venue." <u>Id.</u> at 498.  The <u>Jones</u> Court further held

5  that a forum selection clause which "requires a California

6  franchisee to resolve claims related to the franchise agreement in

7  a non-California court directly contravene[d] th[at] strong public

8  policy  and [wa]s unenforceable under the directive of [the Supreme

9  Court in] <u>Bremen</u>."  <u>Id.</u>  On that basis, the Ninth Circuit affirmed

10 the district court's denial of a franchisor's motion to dismiss or

11 transfer venue under section 1406(a) based upon a contractual forum

12 selection clause.  <u>Id.</u>  In <u>Govan I</u>, the defendants urged this court

13 to reach the same result as did the Court in <u>Jones</u>.  See <u>Govan I</u>,

14 2006 WL 2523460 at *3.

15     This court declined to apply the <u>Jones</u> reasoning to the

16 present case, however.  In denying defendants' motion to dismiss

17 for improper venue, this court expressly "concur[red] with

18 Plaintiff's assertion that venue in cases removed from state court

19 [is] governed by 28 U.S.C. § 1441(a), rather than 28 U.S.C. §

20 1391." <u>Id.</u> *4 (citing <u>Polizzi v. Cowles Magazines, Inc.</u>, 345 U.S.

21 663, 665 (1953)). Section 1441(a) states in relevant part that

22 "[e]xcept as otherwise expressly provided by Act of Congress, any

23 civil action brought in a State court of which the district courts

24 of the United States have original jurisdiction, may be removed by

25 the . . . defendants, to the district court of the United States

26 for the district and division embracing the place where such action

27 is pending."  28 U.S.C. § 1411(a).  In light of the foregoing, and

28 because "[d]efendants d[id] not challenge . . . venue under . . .

- 5 -

[section] 1441(a)[,]" this court concluded that it "need not analyze Defendants' argument regarding whether the enforcement of the forum selection clause would contravene a 'strong public policy' of California." Govan I, 2006 WL 2523460, at *5. This court also denied defendants' alternative motion to transfer venue as section 1404(a) permits. See id. at *5 - *6.

### *Discussion*

### *I.   28 U.S.C. § 1292(b)*

"'Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals.'" Kight v. Eskanos & Adler, P.C., 2007 WL 173825, at *2 (S.D.Cal. Jan. 8, 2007) (quoting In re Cement Antitrust Litigation, 673 F.2d 1020, 1025-26 (9th Cir. 1982) (en banc)). Certification of a non-appealable order under section 1292(b) is appropriate where the order (1) "involves a controlling question of law[;]" (2) "as to which there is a substantial ground for difference of opinion[;]" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" See 28 U.S.C. § 1292(b); see also Cement Antitrust, 673 F.2d at 1026. "All three requirements must be met for certification to issue[]" under that statute. Kight, 2007 WL 173825, at *2 (citation omitted).

In United States v. Woodbury, 263 F.2d 784 (9th Cir. 1959), the seminal Ninth Circuit case on certification, the Court noted "[t]hat § 1292(b) is to be applied sparingly and only in exceptional cases[.]" Id. at 788 n.11 (citations omitted). This view is consistent with the legislative history of section 1292(b) which supports caution in its application. "[I]n passing this

1   legislation Congress did not intend that the courts abandon the
2   final judgment doctrine and embrace the principle of piecemeal
3   appeals." Id. (internal quotation marks and citation omitted).
4   Thus, as the Ninth Circuit has more recently observed,
5   because"[s]ection 1292(b) is a departure from the normal rule that
6   only final judgments are appealable," it "must be construed
7   narrowly." James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1068
8   n. 6 (9th Cir. 2002). Section 1292(b) certification "is intended
9   to be 'used only in exceptional situations in which allowing an
10  interlocutory appeal would avoid protracted and expensive
11  litigation.'" Kight, 2007 WL 173825, at *1 (quoting Cement
12  Antitrust, 673 F.2d at 1026); see also In re Related Asbestos
13  Cases, 23 B.R. 523, 532 (N.D.Cal. 1982) (internal quotation marks
14  and citation omitted) ("Certification under 1292(b) is intended to
15  be used in the few situations where an immediate appeal . . . would
16  more speedily terminate the litigation.")  "'It is not thought that
17  district judges would grant the certificate in ordinary litigation
18  which could otherwise be promptly disposed of or that mere
19  question[s] as to the correctness of the ruling would prompt the
20  granting of the certificate.'" Lopritz v. CMT Blues, 271 F.Supp.2d
21  1252, 1254 (S.D. Cal. 2003) (quoting Woodbury, 263 F.2d at 785 n.2
22  (quoting in turn S.Rep. No. 2434 91958), reprinted in 1958
23  U.S.C.C.A.N. 5255, 5260).  More succinctly put, section 1292(b)
24  was not intended "'merely to provide review of difficult rulings in
25  hard cases.'" Environmental Protection, 2004 WL 838160, at *2
26  (quoting United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th
27  Cir. 1966)).  Consequently, only "[i]n rare circumstances" may a
28  district court "allow an immediate appeal of an interlocutory

1  order."   Board of Trustees of Leland Stanford Junior University v.

2  Roche Molecular Systems, Inc., 2007 WL 1119193, at *2 (N.D.Cal.

3  April 16, 2007) (citing James, 283 F.3d at 1068, n.6).

4      "The decision to certify an order for interlocutory appeal is

5  committed to the sound discretion of the district court."  United

6  States v. Tenet Healthcare Corp., 2004 WL 3030121, at *1 (C.D.Cal.

7  Dec. 27, 2004) (citing Swint v. Chambers County Comm'n, 514 U.S.

8  35, 47 (1995)).  Hence, "a district court's denial of a motion to

9  certify a decision for immediate appeal under section 1292(b) is

10  not reviewable by the appellate court."  Environmental Protection

11  Information Center v. Pacific Lumber Co., 2004 WL 838160, at *2,

12  n.6 (N.D.Cal. April 19, 2004) (citing Executive Software v. U.S.

13  Dist. Court, 24 F.3d 1545, 1550 (9th Cir. 1994)). By the same

14  token, however, "[e]ven where the district court makes such a

15  certification, the court of appeals nevertheless has discretion to

16  reject the interlocutory appeal, and does so quite frequently."

17  James, 283 F.3d at 1068, n.6 (citation omitted).  With these

18  standards firmly in mind, the court will consider whether

19  defendants have met the three criteria necessary for section

20  1292(b) certification.

21      ***A.   "Controlling Question of Law"/"May Materially Advance the
22      Ultimate Termination of the Litigation"***

23      "Congress did not specifically define what it meant by

'controlling'" as used in section 1292(b).  See Cement Antitrust,

24  673 F.2d at 1026.  Likewise, "[t]he Ninth Circuit's guidance as to

25  what constitutes a controlling question of law is minimal."  Sierra

26  Foothills Public Utility District v. Clarendon American Insurance

27  Company, 2006 WL 2085244, at *2 (E.D. Cal. July 25, 2006).  It is

28

well settled, however, that "[t]he issue need not be 'dispositive of the lawsuit in order to be regarded as controlling[.]'" Id. at *2 (quoting Woodbury, 263 F.2d at 787-88).  But at the same time, the issue "cannot be 'collateral to the basic issues of [the] case.'" Id.  In this Circuit "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" Kight, 2007 WL 173825, at *2 (quoting Cement Antitrust, 673 F.2d at 1026).  Thus, it is clear is that "'at the very least, a controlling question of law must encompass every order which, if erroneous, would be reversible error on final appeal.'" Sierra Foothills, 2006 WL 2085244, at *2 (quoting Cement Antitrust, 673 F.2d at 1026) (other citation omitted).

     "The third requirement for an interlocutory appeal -- that the appeal must be likely to materially speed the termination of the litigation -- is closely linked to the question of whether an issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case." L.H. Meeker v. Belridge Water Storage District, 2007 WL 781889, at *6 (E.D. Cal. March 13, 2007) (citing Cement Antitrust, 673 F.2d at 1026); see also Environmental Protection Information, 2004 WL 838160, at *3 n. 7 (A "court must assess whether immediate appellate reversal will speed the outright disposition of [an] action (even if this conflates the 'controlling issue' analysis with the 'speed disposition' one").") Given this close link, the court will jointly address the first and third elements necessary for certification under section 1292(b).  The court will then address the third element -- whether there exists a substantial

1    ground for difference of opinion.

2         Defendants baldly assert that this court's "determination that

3    venue is proper in Arizona, notwithstanding California's Franchise

4    Relations Act, is a legal decision that presents a controlling

5    question of law of utmost importance." Doc. 15 at 3. Defendants

6    further contend that if the court denies this motion, and if they

7    ultimately succeed on appeal, "then the entire case may have to be

8    litigated a second time[.]" Id. at 4. Based upon the foregoing,

9    evidently it is defendants' position that this court's venue

10   determination in Govan I constitutes reversible error. Hence, the

11   venue issue amounts to a controlling question of law because its

12   disposition on appeal will materially affect the outcome of this

13   litigation. Resolution of the venue issue will also, from

14   defendants' standpoint, materially advance the ultimate termination

15   of this litigation.

16        Framing the challenged issue differently, Best Western

17   counters that Govan I does not involve a "controlling question of

18   law" because reversal of the "the question [of] whether 28 U.S.C. §

19   1441(a), rather than 28 U.S.C. § 1391 controls venue in removed

20   cases would . . . have *no effect whatsoever* on the outcome of the

21   litigation[.]" Doc. 21 at 3 (emphasis added). Furthermore,

22   according to Best Western an immediate appeal would not materially

23   advance the termination of this litigation. Indeed, such an appeal

24   would have the opposite effect in that it would "unnecessarily

25   protract[] the case and increase[] the cost of this litigation."

26   Id. at 4.

27        In their reply, defendants state that Best Western is under

28   the "mistaken impression that the legal issue [they] seek to appeal

1   is whether 28 U.S.C. § 1441(a) controls venue in removed cases."

2   Doc. 23 at 1.  Defendants are "not contest[ing] the general initial

3   application of § 1441(a) to venue in removed cases[.]" Id. In fact,

4   they expressly concede that that issue is not a "controlling

5   question of law worthy of interlocutory appeal."  Id. Rather, as

6   defendants frame it, the "controlling issue of law" which does

7   warrant granting this certification motion "is whether a franchisor

8   doing business in California may sidestep that state's important

9   public policy against forum selection clauses for its franchisees,

10  as enunciated by the Ninth Circuit in Jones . . . , by filing a

11  lawsuit in the franchisor's choice state court."  Id.3 at 1-2

12  (citation omitted).

13        Regardless of how the issue for certification is defined,

14  there is case law to support defendants' position that if venue is

15  found to be improper on appeal, the result will be reversal.  See,

16  e.g. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491

17  (9th Cir. 1979) (on interlocutory appeal Court reversed district

18  court's denial of summary judgment based on improper venue); and

19  Bechtel v. Liberty National Bank, 534 F.2d 1335 (9th Cir. 1976)

20  (reversing judgment on the merits after trial where district court

21  improperly denied a defendant's motion to dismiss for improper

22  venue). In fact, in Central Valley Chrysler-Jeep, Inc. v.

23  Witherspoon, 2005 WL 2709508 (E.D.Cal. Oct. 20, 2005),

24  reconsideration denied, 2005 WL 3470653 (E.D.Cal. Dec. 19, 2005),

25  the court granted a motion for an interlocutory appeal of its order

26  denying defendant's motion to dismiss for improper venue.  In

27  certifying that appeal the court found that "an immediate appeal"

28  of the venue issue would "materially advance the ultimate

1  termination of th[at] litigation . . . because a reversal by the

2  Ninth Circuit of this court's ruling on intra-district venue may

3  result in the vacation of any substantive rulings made by this

4  court and the transfer of this action to the Sacramento Division."

5  Id. at 8( (citing, *inter alia*, Olberding v. Illinois Cent. R. Co.,

6  346 U.S. 338, 74 S.Ct. 83 (1953)).

7       On the other hand, case law exists supporting Best Western's

8  opposing view, *i.e.* venue issues do not involve controlling

9  questions of law; nor do they materially advance the termination of

10  litigation.   For example, in Graves v. C & S National Bank of

11  Georgia, 491 F.Supp. 280 (D.S.C. 1980), the court denied

12  plaintiffs' motion for an interlocutory appeal of its order finding

13  that venue was improper under the National Bank Act's venue

14  provision.   In denying that motion, the Graves court held that the

15  venue issue was not a "controlling question" because "the decision

16  as to whether venue [wa]s proper and transfer appropriate [wa]s not

17  determinative of th[at] . . . case."  Id. at 282.   Likewise, the

18  court found that venue "relate[d] to [a] preliminary matter . . .

19  as opposed to any determinative legal issue in the case itself."

20  Id. at 283.   Thus, the court explained that "any determination on

21  . . . [venue] [wa]s less likely to result in the avoidance of

22  expensive litigation."  Id.

23       In addition, the Graves court reasoned that although its

24  decision did "set venue in Georgia, . . . , a decision for or

25  against transfer does not end the litigation or otherwise determine

26  the rights of the parties as a trial would still be required at

27  some later date."  Id. at 282.   As an additional reason for denying

28  certification, the Graves court found that "an immediate appeal

1  would result in postponing th[e] trial and increase the time and

2  costs of litigation." _Id._

3      In a similar vein, in _Mazzella v. Stineman_, 472 F.Supp. 432

4  (E.D.Pa. 1979), the court found that certification would not

5  materially advance the termination of that litigation.  In so

6  finding, the court rejected plaintiff's argument that "because the

7  court of appeals may well adopt [their] interpretation of the venue

8  statutes, an immediate appeal might obviate the need for a second

9  trial and thus materially advance the ultimate termination of the

10 litigation." _Id._ at 435.  In rejecting this argument the court

11 observed that _Mazzella_ was "an ordinary case, rather than an

12 exceptional one." _Id._ at 436.  Further, the court saw "no reason

13 to believe that the trial . . . w[ould] be either protracted or

14 exceptionally costly." _Id._ Thus, even if an immediate appeal might

15 obviate the need for a second trial, significantly, the court found

16 that  that "savings . . . [wa]s not so significant as to warrant"

17 certification under section 1292(b). _Id._  Accordingly, the _Mazzella_

18 court denied certification of its decision finding venue improper

19 and transferring the action to another district.  _Id._; _see also_

20 _Same Day Surgery Centers, L.L.C. v. Montana Regional Orthopedics_,

21 2003 WL 1565942, at *3 (D.Minn. March 4, 2003) (interlocutory

22 appeal of denial of motion to transfer not allowed in a "relatively

23 straightforward contract dispute" which did "not present protracted

24 and complex litigation[,]" because even if there was the risk of a

25 second trial, that did not show that an appeal would "materially

26 advance the resolution of th[at] litigation[]").

27      Given these divergent views, it is a close call as to whether

28 defendants have shown a "controlling question of law" which "may

1  materially advance the ultimate termination of this litigation[.]"
2  See 28 U.S.C. § 1292(b).  On balance, though, under the facts
3  presented, the court finds that defendants, as the party seeking
4  certification, have not met their burden of showing that
5  "exceptional circumstances justify a departure from the basic
6  policy of postponing appellate review until after the entry of
7  final judgment."  Coopers & Lybrand v. Livesay, 437 U.S. 463, 475,
8  98 S.Ct. 2454, 2461 (1978)).

9       Defendants have not met their burden primarily because this is
10  an ordinary, unexceptional contract dispute.  "The factual and
11  legal issues in this case are not complex and would not necessitate
12  protracted and expensive litigation."  Lopritz v. CMT Blues, 271
13  F.Supp.2d 1252, 1254 (S.D.Cal. 2003).  As the Ninth Circuit
14  explained in Wright, the legislative history of section 1292(b)
15  indicates that that statute is to be applied only in "exceptional
16  cases" such as "antitrust and similar protracted cases[.]" Wright,
17  359 F.2d at 785 n.2 (internal quotations and citation omitted).
18  Obviously, the present straightforward contract dispute does not
19  fall into that category of cases.  Defendants' argument for
20  certification, at most, would "merely provide review of [a]
21  difficult ruling[] in [a] hard case[]."  See id.  Section 1292(b)
22  was not enacted for that purpose, though.  See id.

23       Even if defendants were able to persuade the court that the
24  venue issue presents a "controlling question of law" which "may
25  materially advance the ultimate termination of this litigation" so
26  as to bring it within the ambit of section 1292(b), still, the
27  court would deny this certification motion.  The court would deny
28  this motion because, as explained below, defendants have not shown

1  that there is a "substantial ground for difference of opinion" on

2  the venue issue.

3      **B.   *"Substantial Ground for Difference of Opinion"***

4      As to the second criteria for section 1292(b) certification,

5  defendants assert that the court's "determination that venue is

6  proper in Arizona, notwithstanding California's Franchise Relations

7  Act . . . is one that *reasonably could* provoke a substantial

8  difference of opinion."  Doc. 15 at 3 (emphasis added).  This is

9  not the governing legal standard, however.  Rather, "[t]he term

10 [substantial ground for difference of opinion] refers to the legal

11 standard applied in the decision for which certification is sought

12 and whether other courts have substantially differed in applying

13 that standard."  Central Valley Chrysler Jeep, 2005 WL 3470653, at

14 *2 (citation omitted); see also Stanford Junior University, 2007 WL

15 1119193, at *2 (citations omitted) ("In order to secure an

16 interlocutory appeal, [defendant] must demonstrate a legitimate and

17 'substantial ground for difference of opinion' between and among

18 judicial bodies.")  Thus, "[a] party's strong disagreement with the

19 court's ruling is not sufficient for there to be a 'substantial

20 ground for difference'; the proponent of an appeal must make some

21 greater showing."  Hansen v. Schubert, 459 F.Supp.2d 973, 1000

22 (E.D.Cal. 2006) (citation omitted).

23     In an attempt to show a substantial ground for difference of

24 opinion, without explaining, defendants assert that Govan I and

25 Jones "present two different answers to th[e] question[]" of

26 "whether [the Act] is immaterial in cases involving California

27 franchisees that are removed to judicial districts outside of

28

1  Arizona."[4]  Doc. 15 at 3.  As an additional basis for asserting

2  that there is a "substantial ground for difference of opinion,"

3  defendants claim that "[t]his case presents an issue of first

4  impression[.]"  Id.

5       Best Western responds that defendants have not made the

6  requisite "difference of opinion" showing because they have not

7  "cite[d] [to] a single decision in which any other court has

8  substantially differed with this Court in determining the

9  appropriate statue governing venue in removed cases."  Doc. 21 at

10  4.   Instead, as Best Western construes defendants' argument, they

11  are simply "re-hash[ing]" their disagreement with this court's

12  ruling in Govan I; and, as set forth above, this is insufficient to

13  show a "substantial difference of opinion" warranting certification

14  under section 1292(b).   See id.

15       In their reply, rather than directly responding to these

16  arguments, defendants reframe the issue about which they claim

17  there is a substantial ground for difference of opinion.  This

18  time, as noted earlier, as defendants frame it, the issue is

19  "whether a franchisor doing business in California may sidestep

20  that state's important public policy against forum selection

21  clauses for its franchisees, as enunciated . . . in Jones, . . . ,

22  by filing a lawsuit in the franchisor's choice state court."  Doc.

23  23 at 1-2 (citation omitted).  As defendants read Govan I, this

24  court "impliedly" addressed that issue "by finding that Defendants'

25  removal in effect waived any venue challenged.'"  Id. at 2 (citation

26

27        [4]    Defendants' framing of the issue in this way is puzzling in several
    ways, but the most significant is that plainly this action was not removed to a
28  "judicial district[] outside of Arizona."  See Doc. 15 at 3.

- 16 -

1   omitted).  Not only is this finding "contrary to the law regarding

2   non-waiver of venue challenges by removal," but defendants assert

3   that "[m]ore importantly, th[is] Court's holding renders [the Act]

4   illusory and in direct conflict with . . . <u>Jones</u>."  <u>Id.</u>  Further,

5   according to defendants, "the Ninth Circuit [needs] to clarify

6   whether <u>Jones</u> is limited only to those cases that were initially

7   filed in federal court or a California state court."  Doc. 15 at 3.

8        Try as they might, defendants have not made the necessary

9   showing of a "substantial ground for difference of opinion" within

10  the meaning of section 1292(b).  Defendants' attempt to demonstrate

11  a conflict between <u>Govan I</u> and <u>Jones</u> is unpersuasive.  <u>Govan I</u> and

12  <u>Jones</u> involved different issues.  In the former the issue was which

13  statute governs venue in removed actions, 28 U.S.C. § 1441(a) or 28

14  U.S.C. § 1391.  Thus, the court found no need to address the

15  argument, based upon <u>Jones</u>, that the forum selection clause in the

16  Agreement at issue herein contravenes a strong public policy of

17  California.  What is more, because <u>Jones</u> was removed to a

18  California district court, the <u>Jones</u> Court was considering whether

19  enforcement of the forum selection clause there would "contravene a

20  strong public policy of the forum in which [the] suit [wa]s

21  brought[,]" <i>i.e.</i> California.  <u>See</u> <u>Jones</u>, 211 F.3d at 497 (citing

22  <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972)).

23  Plainly, as Best Western pointed out in <u>Govan I</u>, such an analysis

24  is irrelevant here because "even if the Court were to follow <u>Jones</u>,

25  it would have to review whether the Agreement's forum selection

26  clause contravenes a strong public policy of the State of

27  Arizona[,]" not California.  <u>Govan I</u>, 2006 WL 2523460, at *4

28  (citation omitted).  Therefore, the court disagrees with

- 17 -

1  defendants that "[a]t the very least[]" <u>Govan I</u> "conflict[s]" with

2  <u>Jones</u>[.]" <u>See</u> Doc. 15 at 3.

3      Further, essentially it is defendants' position that this

4  court improperly declined to follow <u>Jones</u>.  However, without more

5  defendants have not shown the requisite "substantial ground for

6  difference of opinion." <u>See</u> <u>Sierra Foothills</u>, 2006 WL 2085244, at

7  * 5 (citing 28 U.S.C. § 1292(b)) (Defendant's "bald assertion that

8  this court's interpretation of [the] <u>Gunderson</u> [case] is incorrect

9  does not establish that 'there is substantial ground for difference

10 of opinion' as to the controlling law on this issue.")  Thus, at

11 the end of the day, defendants are left with their disagreement

12 with this court's ruling in <u>Govan I</u>, which "even if vehement, . . .

13 does not establish a 'substantial ground for different of opinion'

14 sufficient to satisfy the statutory requirements for an

15 interlocutory appeal." <u>See</u> <u>First Am. Corp. v. Al-Nahyan</u>, 948

16 F.Supp. 1107, 1116 (D.D.C. 1996).

17     In short, defendants "may disagree with the way the court has

18 interpreted the relevant [law], but at least one party [is always]

19 convinced that the court got it wrong." <u>Environmental Protection</u>,

20 2004 WL 838160, at *4 (internal quotation marks and citation

21 omitted).  As the court soundly reasoned in <u>Environmental</u>

22 <u>Protection</u> though, "[s]uch disagreement is *not* tantamount to a

23 disagreement among the courts, and it does not itself compel

24 section 1292(b) review." <u>Id.</u> (citation omitted) (emphasis in

25 original).  "If it did, nearly every judgment would give rise to an

26 interlocutory appeal." <u>Id.</u> (internal quotation marks and citation

27 omitted).

28

1

### *Conclusion*

2      In short, keeping in mind that section 1292(b) is to be

3 "sparingly" applied, and only in "rare circumstances," the court

4 finds that defendants have not satisfied the requirements for

5 certification under 28 U.S.C. § 1292(b).  Accordingly,

6      IT IS ORDERED that defendants' motion seeking to amend the

7 court's August 29, 2006, Order to add the necessary language for

8 certification to the Ninth Circuit Court of Appeals pursuant to 28

9 U.S.C. § 1292(b) is DENIED (doc. 15).

10      Given that denial, in accordance with the court's prior order

11 of October 13, 2006,

12      IT IS FURTHER ORDERED that defendants "shall have up to and

13 including the fifth day following" the date of this order in which

14 to file their answer.  See Doc. 18 at 1.

15      DATED this 29th day of May, 2007.

16

17

18 _____

19      Robert C. Broomfield
        Senior United States District Judge

20

21 Copies to counsel of record

22

23

24

25

26

27

28

- 19 -